CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 2 0 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FREDA WELLS, )<br>    Plaintiff, ) | Civil Action No. 7:07cv00418 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| C.O. COOPER CAIN, et al., )<br>    Defendants. ) | By: Hon. Glen E. Conrad<br>United States District Judge |

Proceeding pro se, plaintiff Freda Wells, Virginia inmate number 323873, brings this civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Plaintiff, an inmate at Fluvanna Correctional Center for Women ("Fluvanna") in Troy, Virginia, alleges that defendants, correctional officers employed at Fluvanna, subjected her to an unconstitutional body cavity search. Plaintiff seeks damages in the amount of $100,000.00 and an injunction that would require defendants to "pay for all [her] future and present medical bills for various psychiatric care [she] will have to receive." The case is before the court on defendants' motion for summary judgment, arguing that plaintiff failed to properly exhaust all available administrative remedies before filing the instant complaint, as required by 42 U.S.C. § 1997e(a). For the reasons that follow, the court will grant defendants' motion.

## I. FACTUAL SUMMARY

Plaintiff alleges that, on February 22, 2007, defendants "smelled smoke" and, suspecting that plaintiff possessed contraband, searched her cell and then strip searched her and her cellmate. Not satisfied with the results of the strip search, defendants then subjected plaintiff to a body cavity search, which was performed either by or in the presence of medical personnel.*

---

* The exact circumstances of the body cavity search are not clearly described in the complaint or the motion for summary judgment. Plaintiff states that defendants escorted her to "Building 8# [sic] Nurses Station,"
(continued...)

## II. STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Rule 56(e). Instead, the non-moving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. Anderson, 477 U.S. at at 256-57.

## III. ANALYSIS

The Virginia Department of Corrections ("VDOC") has established a grievance process with which inmates are oriented upon intake into the VDOC. The VDOC grievance process requires that,

---

*(...continued)
where she was compelled to submit to anal and vaginal cavity searches until defendants were satisfied that they had recovered all secreted contraband. Plaintiff states that the cavity search resulted in the recovery of "plastic only" and that, after the "plastic" was recovered, no further cavity search was warranted, but that defendants persisted for defendants' "pleasure and amusement."

prior to submitting a regular grievance, an inmate must demonstrate that she has made a good faith effort to resolve her complaint informally. An informal resolution is attempted by submitting an informal complaint form to the appropriate department head. Staff members are required to respond within 15 calendar days; the 15-day period is an attempt to ensure that informal responses are provided prior to the expiration of the 30-day period within which an inmate may file a regular grievance, should she be dissatisfied with the outcome of her informal complaint. When an inmate files a regular grievance, the regular grievance must meet the filing requirements of Division Operating Procedure 866. If the regular grievance is deficient or has been submitted inappropriately, e.g., without having been reviewed in the informal complaint stage, the inmate must be informed within two working days of the receipt of the regular grievance. If a regular grievance is deemed inappropriate for intake, the reason for its rejection is noted upon the reverse side of the grievance form, and the inmate is instructed as to how she may remedy the intake deficiency. If an inmate disagrees with the intake decision, she may forward the grievance to the Regional Ombudsman for an appeal of the intake determination.

Once a regular grievance is found appropriate for intake, a Level I review is conducted by the warden or superintendent of the inmate's facility. A Level I decision informs an inmate that, when an inmate is dissatisfied with a Level I determination, the inmate may initiate a Level II appeal to the office of the Regional Director, the Health Service Director, or the Chief of Operations for Classifications and Records. Level II is usually the final level of review, although some matters may be appealed to Level III, the office of the Deputy Director or the Director of the VDOC.

Defendants' exhibits, including an affidavit from Fluvanna's grievance coordinator and a complete record of all documents plaintiff submitted to prison officials regarding this matter,

indicate that, on March 28, 2007, more than 30 days after the search on February 22, 2007, plaintiff filed her first informal complaint to the Grievance Coordinator. The Grievance Coordinator advised plaintiff that the matter should be addressed by the staff supervisor.

On March 28, 29, and 30, 2007, and April 3, 4, and 6, 2007, plaintiff attempted to file regular grievances regarding the search on February 22, 2007. However, these grievances were returned to plaintiff because she had failed to follow the informal procedures prior to submitting her regular grievance. Plaintiff did not appeal any of the adverse intake decisions.

Plaintiff filed additional informal complaints on April 17, 2007, regarding the lack of action that was taken toward the staff members who had subjected her to an inappropriate body cavity search. Plaintiff filed emergency grievances on April 7, 2007, but was advised that her situation did not meet the definition of an emergency for purposes of an emergency grievance.

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA") which provides, in part, that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). By the plain language of the statute, exhaustion of administrative remedies is a precondition to the filing of a prisoner's civil rights action; thus, a plaintiff who filed her lawsuit before exhausting administrative remedies cannot satisfy the § 1997e(a) requirement, even if she later demonstrates that she filed a grievance and appealed it to the highest extent of the prison's grievance procedure after commencing the lawsuit. See Dixon v. Page, 291 F.3d 485 (7th Cir. 2002), citing Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 535 (7th Cir. 1999) (holding that an inmate complaint must be dismissed for failure to exhaust even if the inmate demonstrates

that he filed a grievance and appealed it to the highest level of the prison's grievance procedure after commencing the lawsuit).

Proper exhaustion of administrative remedy procedures for purposes of § 1997e(a) means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. See, e.g., Woodford v. Ngo, 126 S.Ct. 2378, 2385 (2006) (reasoning, id. at 2387, that "[t]he text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion. Section 1997e(a) refers to 'such administrative remedies as are available,' and thus points to the doctrine of exhaustion in administrative law"). Section 1997e(a) applies whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion provision is mandatory, even in those instances where an inmate claims that exhaustion would be futile or the remedy inadequate. Id. at 741, n.6. For example, the inmate in Booth filed a grievance pursuant to the state prison's grievance procedure, but failed to appeal the denial to the intermediate or final appeal levels. Because the inmate failed to appeal the denial, the inmate was deemed to have failed to exhaust his administrative remedies. Id. at 735. Additionally, the Court in Booth held that even where inmates limited their "prayers for relief to money damages not offered through administrative grievance mechanisms . . . . Congress has mandated exhaustion clearly enough." Id. at 741.

Defendants' exhibits indicate that plaintiff submitted her first informal complaint to the wrong department, and that all of her informal complaints were submitted outside of the 30-day period within which a grievance must be initiated. Subsequently, plaintiff filed a number of grievances (again initiated outside of the 30-day period) regarding the body cavity search, but they

5

were all returned to her as deficient because she had not first sought to resolve her complaint informally. Plaintiff did not appeal the intake denial of any of those grievances or correct the deficiencies, and it is clear that she could not have resubmitted the grievances within the allotted 30 days, as they were not initiated within that 30-day period.

Because plaintiff did not utilize all steps of the grievance procedures when they were available to her, the court concludes that she failed to exhaust all available administrative remedies. Id. at 741, n.6; Ngo, 126 S.Ct. at 2384-86 (upholding district court's finding that plaintiff failed to properly exhaust all available administrative remedies where initial grievance was rejected because it was not filed within the 15 working day period prescribed by the regulations of the California Department of Corrections); Cooper v. Schilling, et al., Civil Action No. 7:06-cv-00296 (W.D. Va. November 20, 2006) (Turk, S.J.), slip op. at 3-5, 2006 WL 3359592 at *2 (Virginia inmates are required to exhaust claims in accordance with the grievance procedures established by the VDOC); Davis v. Stanford, 382 F. Supp. 2d 814, 818 (E.D. Va. 2004) (same); Lawrence v. Va. Dep't of Corr., 308 F. Supp. 2d 709, 718 (E.D. Va. 2004) (where prison policies require inmates to file grievances within a specified time period following a complained-of event, but plaintiff is unable to do so because the period has expired, plaintiff is still required to "appeal[] [the] procedural denials to the point of exhaustion of . . . administrative remedies," id. at n. 14, before filing § 1983 action). There is no genuine issue of material fact in this case as to the issue of exhaustion. It is clear that plaintiff failed to properly exhaust the administrative remedies available to her through the inmate grievance system, as required by 42 U.S.C. § 1997e(a), and the grievance procedure is now unavailable to plaintiff regarding this claim because she failed to utilize it in a timely fashion. Accordingly, the court will grant summary judgment in favor of defendants.

## IV. CONCLUSION

Based on the foregoing, the court will grant defendants' motion.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to all counsel of record for the defendants.

**ENTER:** This 20th day of February, 2008.

*/s/ Jsuly Conrad*
United States District Judge